IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAHER SOLIMAN,<br><br>    Plaintiff,<br><br>  v.<br><br>L-3 COMMUNICATIONS<br>CORPORATION, et al.,<br><br>    Defendants.<br>                                                          / | No. C 08-04838 WHA<br><br>**ORDER RE CROSS-MOTIONS FOR REMAND AND FOR DISMISSAL WITHOUT PREJUDICE** |

**INTRODUCTION**

In this action for employment discrimination and breach of contract, plaintiff Maher Soliman moves for remand to state court, and defendants L-3 Communications Corporation and MPRI, Inc., move to dismiss for improper venue. This order finds that the action was properly removed to federal court but that the Northern District of California is not a proper venue. For the reasons stated below, plaintiff's motion to remand is therefore **DENIED**, and in the "interests of justice" this action will be transferred to the United States District Court for the Eastern District of Virginia.

**STATEMENT**

Plaintiff Maher Soliman, who is acting *pro se* (but holds a J.D. degree), filed this complaint against fifteen defendants in San Francisco Superior Court. The complaint contains seven counts, including Title VII claims for employment discrimination and retaliation, a claim for breach of contract and other state claims.

Plaintiff was born in Cairo, Egypt and is a native Arabic speaker. He received a Bachelors degree in accounting from Cairo University in 1978, moved to the United States thereafter and became a United States citizen in 1991. He currently resides in San Francisco (Compl. ¶¶ 16, 22–24).

Plaintiff alleges that in March 2003, he began working as a "support team linguist and cultural advisor" to the American troops in Iraq. He completed his Juris Doctor degree in November 2003; he continued working for the United States Department of Defense. In January 2005, he entered into an independent contract with the Department of Defense to work as a "prosecutor and cultural advisor" through January 2006. When his contract with the Department of Defense terminated, he applied for jobs with other employers through various employment agency sites and began receiving invitations to apply for positions in Iraq similar to those which he had held with the Department of Defense (Compl. ¶¶ 16, 25–27).

On or around May 3, 2007, plaintiff was denied employment by defendants Acclaim, Tones, Calnet and Sebenza all of whom, the complaint avers, were subcontractors of defendant L-3 and used the same employment database and employment policies as L-3. Plaintiff was informed that L-3's policy required that candidates for the positions were born in Iraq, and that plaintiff was denied employment because he was a Christian Egyptian. On July 3, 2007, plaintiff filed charges with the Equal Employment Opportunity Commission against Acclaim, Tones, Calnet and Sebenza (Compl. ¶¶ 29–31).

On July 14, 2007, plaintiff was invited by L-3 to visit the company's Virginia offices to take part in their employment process, and on July 25, 2007 the company hired plaintiff to work as a linguist. On or about August 2, 2007, plaintiff's employment was terminated without having been paid for the period of his employment. Plaintiff was informed that he was terminated because he was not born in Iraq. Plaintiff was further informed that due to his Christian faith, he may not be suitable fit for the position in Iraq. Plaintiff avers that "[o]n or about August 2nd, 2007, L3 learned from the database it shared with its subcontractors that plaintiff had filed four different charges of discrimination with the EEOC against Acclaim,

Torres, Calnet and Sebenza. L3 retaliated against plaintiff for filing the aforementioned charges and terminated his employment" (Compl. ¶¶ 32–37).

Plaintiff filed the instant complaint in San Francisco Superior Court on September 8, 2008. Plaintiff, however, did not serve the summons and complaint on any of the defendants (Pl. Brief at 1; Dkt. No. 1 ¶¶ 2, 7).

On October 22, 2008, defendants L-3 Communications Corporation and MPRI filed a notice of removal to federal court. No other defendant joined the notice. Plaintiff moves to remand the action to state court, and the removing defendants move to dismiss the complaint without prejudice for improper venue.

**ANALYSIS**

**1.     MOTION TO REMAND.**

Plaintiff argues that removal is improper for the following reasons: removal is premature because defendants L-3 and MPRI noticed the removal before plaintiff served any of the defendants; all defendants have not consented to removal; defendants have failed to establish federal jurisdiction; and because the doctrine of abstention articulated in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), should apply.

A defendant may remove a civil action from state court to federal court if original jurisdiction would have existed at the time the complaint was filed. 28 U.S.C. 1441(a). Defendant bears the burden of establishing proper removal. *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir.2006). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance," such that courts must resolve all doubts as to removability in favor of remand. *Gaus v. Miles Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

Plaintiff relies on *Murphy Bros., Inc. v. Michetti Pipe Stringing*, 526 U.S. 344 (1999), for its claim that removal was premature. That decision held that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Id*. at 347–48. The

3

decision addressed when the 30-day removal period under Section 1446(b) begins to run for the purposes of determining whether a removal notice is *tardy*. It found that, because defendants are not *required* to respond until they have been formally served, the 30-day period begins to run only upon "service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id*. at 350. It did not address whether a defendant may remove a case *prior* to the commencement of that 30-day clock; that is, whether service is a prerequisite to removal.

Although decisions on claims of premature removal are infrequent and no Ninth Circuit decision on the subject has been found, courts outside of this circuit have ruled that a defendant may remove prior to formal service. For example, in rejecting a claim of premature removal, the Fifth Circuit reasoned as follows:

> Generally, service of process is not an absolute prerequisite to removal . . . . We read § 1446(b) and its "through service or otherwise" language as consciously reflecting a desire on the part of Congress to require that an action be commenced against a defendant before removal, but not that the defendant have been served. Indeed, 28 U.S.C. § 1448, which provides that service may be completed in district court for any removed case from state court in which any one or more of the defendants was not served with process or in which the service was not perfected prior to removal, reinforces a less demanding view of the service "requirement" prior to removal. And under Texas law, an action has commenced when a petition is filed.

*Delgado v. Shell Oil Co.*, 231 F.3d 165 (5th Cir. 2000), *cert. denied*, 121 S. Ct. 1603 (2001). District courts in other circuits have reached the same conclusion. *See, e.g.*, *Massey v. Cassens & Sons*, 2006 WL 381943, at *1 (S.D. Ill. 2006) (unreported); *Arthur v. Litton Loan Servicing*, 249 F.Supp. 2d 924, 930–31 (E.D. Tenn. 2002); *Doney v. CMI Corp.*, 2000 WL 554125, at *1–2 (W.D. Mo. 2000) (unreported).

Under California law, like Texas law, an action is commenced when the complaint is filed with the court. Cal. Civ. Pro. § 411.10. *Murphy Brothers* predicated its holding on the traditional rule that official service is a prerequisite for *requiring* a defendant to respond but it noted that defendants may waive the service requirement: "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Murphy Bros.*, 526 U.S. at 347–48. Moreover, as the Fifth Circuit noted, Section 1448 allows for

4

service to be perfected in federal court following removal where "any one or more of the defendants has not been served," suggesting that service is not a prerequisite to removal. For these reasons, this order declines to find removal premature.

Plaintiff next argues that removal was improper because not all defendants have consented to remove the action. With limited exceptions, all of the defendants in the state court action must consent to and join in the petition for removal. *Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 680 (9th Cir.2006). This rule applies, however, only to those defendants properly served and joined in the action. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir.1988) (citation omitted). If fewer than all defendants join in removal, the removing party has the burden, under Section 1446(a), of affirmatively explaining the absence of the non-joining defendants in the notice for removal. *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1266 (9th Cir.1999) *overruled on other grounds by Abrego*, 443 F.3d at 670. Here, defendants clearly stated the reason that no defendant other than L-3 and MPRI has joined in the removal: removing defendants have monitored the San Francisco Superior Court docket in this matter and, as of the date of the notice, the court's Register of Actions reflected that no proof of service had been filed for any of the non-removing defendants (Notice at ¶¶ 6–8). As stated, *none* of the defendants in this action — including the non-removing defendants — have been served. Defendants L-3 and MPRI, therefore, were not required to join the non-removing defendants in the removal.

Plaintiff's remaining challenges to removal merit little discussion. Federal jurisdiction over this action plainly exists — as stated, the complaint asserts multiple claims under Title VII, in addition to state claims. Similarly, there is no basis for the application of *Burford* abstention. In *Burford*, "the Supreme Court determined that a federal court could decline to exercise its jurisdiction to hear a case that involved an essentially local issue arising out of a complicated state regulatory scheme." *Tucker v. First Maryland Sav. & Loan, Inc.*, 942 F.2d 1401, 1404 (9th Cir. 1991). That is, abstention is appropriate "if the case presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, or if decisions in a federal forum would be disruptive of state

5

efforts to establish a coherent policy with respect to a matter of substantial public concern." *City of Tucson v. U.S. West Communications*, 284 F.3d 1128, 1132 (9th Cir. 2002) (internal quotations and citations omitted). The Ninth Circuit, however, has noted that Burford abstention is an "extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Id*. at 1133. Here, plaintiff has identified neither a complex local administrative scheme nor an overarching local concern that predominates over the policies underlying Title VII. For all of these reasons, plaintiff's motion to remand is denied.

### 2. MOTION TO DISMISS FOR IMPROPER VENUE.

Defendant moves to dismiss this lawsuit without prejudice for improper venue. In Title VII actions, venue is proper:

> [1] in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but [4] if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. 2000e-5(f)(3). Where venue is *improper*, a district court must either dismiss the case or transfer it "in the interests of justice" to an appropriate jurisdiction. 28 U.S.C. 1406(a); FRCP 12(b)(3). Where venue is *proper*, a court may transfer any civil action to another jurisdiction where it may have been brought "for the convenience of parties and witnesses, in the interests of justice." 28 U.S.C. 1404(a). *See also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986) (discussing the suitability of venues for transfer).

Defendants contend that venue in the Northern District is improper because the alleged hiring or termination decisions were made in Reston, Virginia; that the company's employment records are maintained in Reston, Virginia; that plaintiff would have worked in Iraq, not California; and that defendants' principal place of business is in Virginia (Br. at 3).

Plaintiff, in contrast, argues that defendant maintains an office in San Diego, California, in addition to its Virginia office; that the first act of discrimination occurred in California on May 3, 2007, before plaintiff was hired or went to Virginia; and that but for the discrimination,

6

1  plaintiff would have worked for defendant at Camp Pendleton, California upon his return from
2  Iraq (Opp. at 7–8).

3        Plaintiff has not alleged that the employment records relevant to the challenged practice
4  are maintained in the Northern District of California, nor that he would have worked in the
5  Northern District of California but for the challenged practice, nor that defendant's "principal
6  office" is in the Northern District of California. Venue is proper, therefore, only if "the
7  unlawful employment practice is alleged to have been committed" in California.

8        Plaintiff claims that the first unlawful employment practice occurred in California on
9  May 3, 2007, before plaintiff was hired or went to Virginia — presumably in reference to the
10 complaint's allegation that "on or about May 3rd, 2007, plaintiff was denied hire by several
11 defendants herein" (Compl. ¶ 29). Plaintiff's reasoning evidently runs as follows. The
12 complaint alleges that plaintiff lives in San Francisco and was denied hire on May 3, 2007;
13 plaintiff must therefore have applied from and/or been denied employment while in San
14 Francisco; and such an act renders venue proper in the Northern District.[1]

15       The Ninth Circuit has explained that, "[i]n general, the effect of Title VII's venue
16 provision is to allow suit in the judicial district in which the plaintiff worked or would have
17 worked . . . . venue should [also] be found where the effect of the unlawful employment
18 practice is felt: where the plaintiff works, and the decision to engage in that practice is
19 implemented." *Passantino v. Johnson & Johnson Consumer Products*, 212 F.3d 493, 504–05
20 (9th Cir. 2000). That is, "the only limitation contemplated by the provision is that it seeks to
21 limit venue to the judicial district concerned with the alleged discrimination." *Id*. at 504
22 (internal quotation and citations omitted).

23       The connection of this action to the Northern District is tenuous at best. As stated,
24 *Passantino* clarified that an employment decision is "felt" for venue purposes where plaintiff
25 worked and where the decision to engage in the practice was implemented. *Passantino*, 212

---

[1] In support of this claim, plaintiff cites Exhibit G to the Soliman declaration. That exhibit contains a Freedom of Information Act request dated May 4, 2007; two unidentifiable sections of a form, both of which list L-3 at a Reston, Virginia address; and on a separate page a "sender" box containing plaintiff's name and a San Francisco address. It is unclear what, if anything, this exhibit adds to the claim.

7

F.3d at 505.  Neither occurred in California.  Under plaintiff's expansive reading of the venue provision, anyone who applies for and is denied employment from anywhere in the country may hale the employer to the plaintiff's home district to litigate a Title VII action — even if the employer has no further connection with the district.  Although the provision is broad, intended to "afford citizens full and easy redress of civil rights grievances," *id.* at 504, this order rejects plaintiff's virtually limitless interpretation of the provision.

This order concludes that the "interests of justice" dictate that this action be transferred to the Eastern District of Virginia.  Plaintiff does not dispute that defendants' principal place of business is in Reston, Virginia, nor that the pertinent employment records are maintained in Reston.  As stated, Reston was also the location where the "decision to engage in [the challenged] practice [was] implemented" (*see* Inghram Decl. ¶ 6–7).  Plaintiff's alleged brief period of employment also, evidently, occurred in Reston — at least, the complaint avers that "[o]n or about July 14th, 2007, plaintiff was invited by L3 to travel to their offices in Virginia as part of the employment process" and that "[o]n or about July 25th, 2007, plaintiff was hired by L-3 to work as a linguist on an At-Will Contract Agreement" but that plaintiff was terminated on August 2, 2007 (Compl. ¶¶ 32–36).  The complaint does not aver that plaintiff traveled to Iraq, or to the San Diego office, or to any other location in that brief interval.  For all of these reasons, this action will be transferred to the Eastern District of Virginia.

## CONCLUSION

For all of the above-stated reasons, this lawsuit will be transferred to the Eastern District of Virginia.

**IT IS SO ORDERED.**

Dated: December 24, 2008

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8